IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

BRIDGEPORT MUSIC, INC.         )
                               )
v.                             )     No. 3:05-0205
                               )     JUDGE CAMPBELL
ESTATE OF CHRISTOPHER WALLACE  )
a/k/a NOTORIOUS B.I.G. ON BEHALF )
OF BIG POPPA MUSIC, ET AL.     )

MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss Counts 2, 3, 6 and 7 of the Fourth Amended Complaint and Strike Plea for Punitive Damages (Docket No. 330). As more particularly set forth herein, the Motion (Docket No. 330) is GRANTED in part and DENIED in part. Counts 2, 6, and 7 are dismissed. Plaintiff's claim in Count 3 for a declaratory judgment of its ownership of "Machine Gun Funk" and "Ready to Die" on the basis that such works are derivative is dismissed. Plaintiff's claims for punitive damages are dismissed.

Also pending before the Court is Defendants' Motion for Leave to File Reply in Further Support of Defendants' Motion to Dismiss Counts 2, 3, 6, and 7 of the Fourth Amended Complaint and Strike Plea for Punitive Damages (Docket No. 340). The Motion for Leave to File Reply (Docket No. 340) is GRANTED.

FACTS

The Court held a pretrial conference in this matter on February 27, 2006 in anticipation of a March 7, 2006 trial date. At the pretrial conference, Defendants were granted leave to amend their responses to certain requests for admission regarding evidence of a license of the composition "Up For The Down Stroke" for use in the composition "Machine Gun Funk," and to pursue a license defense (See, Docket No. 303 at 84). Plaintiff was also granted leave of Court

to pursue an alternative theory of breach of any purported license, or rescission of such license, or both (See, Docket No. 303 at 83). The Court instructed Plaintiff that it could pursue these alternative theories by either amending its pleading or by supplementing the pre-trial order, and that Plaintiff's new claim would be considered filed as of May 4, 2001, the date the lawsuit from which the case originated was filed (Docket No. 303 at 85). In response to the Court's ruling, Plaintiff filed a Fourth Amended Complaint (the "Complaint") (Docket No. 326) adding causes of action for interference with prospective business advantage (Count 2), breach of contract (Count 6) and rescission (Count 7) (See, Docket No. 326). Defendants have filed a Motion to Dismiss (Docket No. 330) these counts as well as Count 3 of the Complaint which alleges an action for declaratory judgment of Bridgeport's ownership of claimed copyright, and to strike Plaintiff's plea for punitive damages.

MOTION TO DISMISS

The purpose of Rule 12(b)(6) of the Federal Rules of Civil procedure is to test whether Plaintiff has stated a claim upon which relief may be granted. Tennessee Protection and Advocacy, Inc. v. Bd. of Educ. of Putnam County, Tennessee, 24 F. Supp. 2d 808, 813 (M.D. Tenn. 1998). "Under Rule 12(b)(6), a complaint may be dismissed 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Id. (quoting Michigan Bell Telephone Co. v. MFS Internet of Mich., Inc., 16 F. Supp. 2d 817, 822-23 (W.D. Mich. 1998)). "The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. The Court, however, need not accept as true legal conclusions or unwarranted factual inferences." Id.

2

ANALYSIS

1. <u>Statute of Limitations – Claim for Rescission (Count 7)</u>.

In Count 7 of the Complaint, Plaintiff asserts a claim for rescission in response to Defendants' claim of the existence of a license for use of "Up For The Down Stroke" in "Machine Gun Funk." As the basis of its claim, Plaintiff asserts that it has not been paid for use of "Up For The Down Stroke" in "Machine Gun Funk," and that its other licensing requirements also have not been met.

Defendants have moved for dismissal of Count 7 (Docket No. 330) arguing that Plaintiff's claim for rescission accrued in 1994 when the album containing "Machine Gun Funk" was released and consideration for any license allegedly failed, and is, thus, timed barred. In response to Defendants' motion, Plaintiff denies the existence of a license. Plaintiff also asserts that to the extent a license is found to exist, Defendants' wrongful conduct first occurred in the summer of 1995, specifically June - August, 1995, when Defendants told Arista that "Up for the Down Stroke" was not included in "Machine Gun Funk," thereby causing royalties not to be paid to Bridgeport. Thus, Plaintiff asserts that its claim for rescission is timely under the six year limitations period of N.Y. C.P.L.R. §213(1). Plaintiff alternatively asserts that Defendants first claimed a license in late September 2005, and February 2006 when the Court granted Defendants leave to change their responses to certain requests for admissions, and that in response to Defendants' claim of license, Plaintiff promptly amended its Complaint to manifest its intent to rescind the alleged license. Therefore, Plaintiff asserts that its claim for rescission of the purported license should be considered timely under N.Y. C.P.L.R. §203 (g) which provides for a limitations period of two years from discovery. Finally, Plaintiff asserts that it would be

inequitable for the Court to allow Defendants to assert the defense of the statute of limitations given that Defendants come to the Court with unclean hands in raising the license defense.

Under New York law, a claim for rescission is generally governed by the six-year statute of limitations of N.Y. C.P.L.R. §213(1), which begins to run upon execution of the contract. See, N.Y. C.P.L.R. §213(1); <u>Mills v. Everest Reinsurance Co.</u>, 410 F. Supp. 2d 243, 253 (S.D.N.Y. 2006).[1] When rescission, however, is sought on the basis of actual fraud, the discovery rule of CPLR 213(8) and 203(g) may apply. See, <u>Abbate v. Abbate</u>, 441 N.Y.S. 2d 506, 516-17 (N.Y. App. Div. 1981). More specifically, N.Y. C.P.L.R. §213(8) and §203(g) afford a plaintiff the opportunity to calculate the statute of limitations at two years after the actual or imputed discovery of the facts giving rise to the cause of action. See, N.Y. C.P.L.R. §§213(8) and 203(g).

In the present case, Plaintiff alleges correspondence between Dan Johnson ("Johnson") of Naru Entertainment and Jane Peterer ("Peterer"), Plaintiff's administrator, in March, 1994 regarding a licenses for use of "Up For The Down Stroke" in "Machine Gun Funk" as the basis for the purported license. Therefore, for purposes of N.Y. C.P.L.R. §213(1), the six year limitations period began to run upon execution of the purported license in March, 1994, and not in 1995 when the alleged misrepresentation to Arista occurred. Given that Plaintiff's Complaint was filed on May 4, 2001, Plaintiff's claim for rescission of the purported license is time barred under the six year limitations period set forth in N.Y. C.P.L.R. §213(1). See, <u>Mills</u>, 410 F. Supp. 2d at 253. In addition, Plaintiff's claim for rescission is not saved by the two year discovery rule

---

[1] The Court has already determined in a related case that New York law governs Plaintiff's claims at common law. (Docket No. 199, Case. No. 3:05-155).

4

of N.Y. C.P.L.R. §§213(8) and 203(g). The essential elements of a cause of action for fraud are: 1) representation of a material existing fact; 2) falsity; 3) scienter; 4) deception; and 5) injury. New York University v. Continental Ins. Co., 87 N.Y.2d 308, 318 (N.Y. 1995). The conduct asserted by Plaintiff as evidence of fraud is Defendants' assertion of a license defense in September, 2005 and February, 2006, and Defendants' earlier denial of the existence of a license. The Court finds, however, that even if such allegations could form the basis of an action for fraud, the facts as alleged by Plaintiff show that Plaintiff had as much, if not more, knowledge of the purported license as did Defendants. Thus, the facts as alleged by Plaintiff in support of its claim for rescission simply do not support a finding of deception, injury and, therefore, actual fraud. Accordingly, the Court finds that the two year discovery rule of N.Y. C.P.L.R. §§213(8) and 203(g) does not apply to Plaintiff's claim for rescission, and Plaintiff's claim for rescission of the purported license is, therefore, time barred.

Finally, the Court is not persuaded by Plaintiff's argument that the doctrine of unclean hands prevents Defendants from asserting a statute of limitations defense. The Court has already addressed any prejudice to Plaintiff in allowing Defendants leave to amend their response to certain requests for admissions by allowing Plaintiff the opportunity to amend their pleading relating back to the filing of the lawsuit.

Accordingly, the Court finds that Plaintiff's claim for rescission of the purported license is time barred. Defendants' Motion to Dismiss (Docket No. 330) Count 7 of the Complaint (Docket No. 326) is GRANTED, and Plaintiff's claim for rescission under New York law is dismissed. Given the Court's ruling, the Court finds it unnecessary to address Defendants' argument that Plaintiff has not affirmatively rescinded the purported license

2. <u>Statute of Limitations – Claim for Interference with Prospective Business Advantage (Count 2)</u>.

In Count 2 of the Complaint, Plaintiff asserts a claim for tortious interference with prospective business advantage in response to Defendants' claim of a license for use of "Up For The Down Stroke" in "Machine Gun Funk." As the basis for its claim, Plaintiff asserts that in 1994 it was contacted by a clearance company which attempted to clear the use of "Up For The Down Stroke" in "Machine Gun Funk," and that, in the summer of 1995, Defendants purposefully and maliciously interfered with business relationships between Plaintiff, the clearance company, and Arista when Defendants told Arista that "Up for the Down Stroke" was not included in "Machine Gun Funk." As a result of Defendants' actions, Plaintiff asserts that royalties were not paid, it was not allowed to receive label credit and be included on the copyrights, and the consuming public was allowed to falsely believe that the music contained in "Machine Gun Funk" was original.

Defendants move for dismissal of Count 2 of the Complaint (Docket No. 330) on the basis that Plaintiff's claim for tortious interference is subject to a three year limitations period, and that under Plaintiff's theory, Defendants' liability for interference arose in the summer of 1995, and is time barred. Plaintiff responds by asserting that it timely asserted its claim within two years of discovery, as provided by N.Y. C.P.L.R. §203(g), upon the production of certain documents by Defendants allowing it to adduce evidence of Defendants' interference with its prospective economic advantage. Moreover, Plaintiff argues that Defendants' interference with its prospective business advantage is continuing and thus gives rise to successive causes of action within the three-year limitations period. More specifically, Plaintiff claims that

6

Defendants continue to deny the use of "Up for the Down Stroke" in "Machine Gun Funk," thereby interfering in the clearance process and causing it to remain unpaid without label or copyright credits.

Under New York law, a three year statute of limitations period applies to a claim for tortious interference with a prospective business advantage. Union Carbide Corp. v. Exxon Corp., 77 F. 3d 677, 681 (2nd Cir. 1996); Besicorp Ltd. v. Kahn, 736 N.Y.S. 2d 708, 711 (N.Y. App. Div. 2002). A cause of action accrues at the time the injury is sustained, rather than the date of a defendant's alleged wrongful act or the date of discovery of the injury by plaintiff. Rosemeier v. Schenker Int'l., Inc., 895 F. Supp. 65, 66 (S.D.N.Y. 1995). Applying these principles to this case and given the facts as alleged by Plaintiff, the injury sustained by Plaintiff would have occurred at the time Defendants allegedly misrepresented to Arista that "Up for the Down Stroke" was not included in "Machine Gun Funk" and not upon the production of documents by Defendants. In addition, case law dealing with claims for tortious interference with contract indicates that Plaintiff's tortious interference claim is not a continuing tort. See, Spinap Corp. v. Cafagno, 302 A.D. 2d 588 (N.Y. App. Div. 2003); Cohane v. Nat'l Collegiate Athletic Assoc., 2005 WL 2373474 (W.D.N.Y. 2005); Radin v. Albert Einstein College of Medicine of Yeshiva University, 2005 WL 1214281 (S.D.N.Y. 2005).

Accordingly, the Court finds that Plaintiff's claim for tortious interference with business advantage is barred by the applicable statute of limitations. Furthermore, with respect to any claim by Plaintiff that the limitations period of N.Y. C.P.L.R. §203(g) applies to its claim for tortious interference and that equitable principles estop Defendants from asserting the statute of limitations, the Court finds that, for the reasons stated above, Plaintiff's claim for tortious

7

interference also would be time barred under N.Y. C.P.L.R. §203(g). Furthermore, any prejudice to Plaintiff in allowing Defendants to assert the existence of the purported license has been cured by allowing Plaintiff to amend its pleading.

Given the Court's ruling, Defendants' Motion to Dismiss (Docket No. 330) Count 2 of Plaintiff's Complaint (Docket No. 326) is GRANTED and Plaintiff's claim for tortious interference with prospective business advantage under New York law is dismissed. Furthermore, in light of the foregoing, the Court finds it unnecessary at this time to address Defendants's arguments that Plaintiff's claim for tortious interference is preempted by the Copyright Act, 17 U.S.C. §101, et seq. (the "Copyright Act"), or that Plaintiff has not stated a claim for tortious interference with prospective business advantage.

3.      Statute of Limitations – Claim for Breach of Contract (Count 6).

In Count 6 of the Complaint, Plaintiff asserts a claim for breach of contract. As the basis of its claim, Plaintiff asserts that Defendants intentionally, purposefully, and maliciously breached any contract found to exist for use of "Up For The Down Stroke" in "Machine Gun Funk" and did so with the intent of defrauding the public at large. More specifically, Plaintiff alleges that not only was Bridgeport never paid for any of the sales of "Machine Gun Funk," but also that the copyright notice filed for "Machine Gun Funk" and label credits did not identify the use of "Up For The Down Stroke" even though Defendants knew that "Up For The Down Stroke" was copied in "Machine Gun Funk." Plaintiff also alleges that in the summer of 1995 Defendants knowingly misrepresented to Arista that "Up For The Down Stroke" was not included in "Machine Gun Funk" so that Plaintiff would neither be paid nor credited on any label copy or copyright registration, and the public would be misled into believing that the music of

8

"Machine Gun Funk" was original. Plaintiff further asserts that Defendants' breaches are material and part of a pattern of similar wrongdoings by Defendants. Plaintiff requests punitive damages because of the malicious and fraudulent nature of the breach and the fact that the fraud was directed in part to the public and evidences a pattern of wrongdoing.

Defendants move for dismissal of Count 6 of the Complaint (Docket No. 330) on the grounds that Plaintiff's claim for breach of contract is time barred. More specifically, Defendants assert that Plaintiff has essentially turned an ordinary breach of contract claim into a quasi-tort claim, seeking punitive damages, and, therefore, the three year statute of limitations period for actions based in tort applies. Defendants further assert that, in any event, Plaintiff's claim would be barred by the six year statute of limitations applicable to causes of action for breach of contract. Plaintiff responds to Defendants' motion by asserting that a six year limitations period applies to its claim based upon breach of contract, and that either a limitations period of three years or a limitations period of two years from discovery, whichever is longer, applies to its claim for tortious breach and punitive damages. Plaintiff also alleges that the purported breach of contract initially occurred in the summer of 1995 when Defendants made its misrepresentation to Arista regarding the inclusion of "Up For The Down Stroke" in "Machine Gun Funk," and that continuing tortious breaches of the contract occur to the present date.

Prior to addressing whether Plaintiff's claims for breach of contract and punitive damages are barred by the applicable statute of limitations, the Court must first consider whether the relevant limitations period sounds in tort, breach of contract or both. Under New York law, punitive damages are available for breach of contract where: 1) the defendant's conduct is actionable as an independent tort; 2) the tortious conduct is egregious; 3) the egregious conduct

9

is directed toward the plaintiff; and 4) the egregious conduct is part of a pattern directed at the public generally. New York University v. Continental Insurance Co., 87 N.Y. 2d at 316 (N.Y. 1995). "A tort obligation is a duty imposed by law to avoid causing injury to others. It is 'apart from and independent of promises made and therefore apart from the manifested intention of the parties' to contract." Id. (quoting Prosser and Keeton, Torts §92 at 655 [5th ed.]). Thus, Defendants only may be liable to Plaintiff in tort if they have "breached a duty of reasonable care distinct from their contractual obligations to Plaintiff, or have engaged in tortious conduct separate and apart from their failure to fulfil their contractual obligations." Id. For example, where a party has fraudulently induced a plaintiff to enter into a contract or where a party has engaged in conduct outside of the contract intended to defeat the contract, its conduct may support an independent tort. Id.

The conduct upon which Plaintiff bases its claim for punitive damages is the allegedly intentional and malicious misrepresentations by Defendants to Arista in the summer of 1995 that "Up For The Down Stroke" was not included in "Machine Gun Funk" in an attempt to defeat the alleged license. As indicated above, the essential elements for a cause of action based upon fraud or misrepresentations are: 1) representation of material fact; 2) falsity; 3) scienter; 4) reasonable reliance; and 5) damages. Id. at 318; Neri v. R.J. Reynolds Tobacco Co., 2000 WL 33911224 (N.D.N.Y. 2000). Accepting the facts as alleged by Plaintiff as true, the Court finds that Plaintiff's Complaint does not contain any facts sufficient to support a finding of reliance by Plaintiff on any alleged misrepresentation by Defendants to Arista. Furthermore, Plaintiff's allegations that Defendants intentionally, purposefully, and maliciously breached the contract, and did so with the intent of defrauding the public at large by not paying for sales of any album

10

or failing to credit Plaintiff for use of the sample, does not give rise to an actionable tort separate and independent of Plaintiff's breach of contact claims. These allegations, without more, merely support a claim that Defendants entered into a contract while lacking the intent to perform. See, New York University, 87 N.Y. 2d at 318 (general allegations that a defendant entered into a contract while lacking the intent to perform are insufficient to support a claim of fraud.) Accordingly, the Court finds that Plaintiff's allegations of tort based upon Defendants' intentional, purposeful and malicious breach of contract and the intentional and malicious misrepresentations by Defendants to Arista fail to state a cause of action for tortious conduct separate and apart from a cause of action for breach of contract based upon Defendants' failure to fulfill its contractual obligations under the license agreement. Having made such a determination, the Court's inquiry is now limited to whether Plaintiff's breach of contract claim is barred by the applicable statute of limitations.

A six year statute of limitations period applies to actions based upon breach of contract. See, C.P.L.R. §213(2). The limitations period begins to run when the breach occurs or when a party to the agreement fails to perform an obligation. See, Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y. 2d 399 (N.Y. 1993). "Where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously, and plaintiff[] may assert claims for damages occurring up to six years prior to filing of the suit." Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp., 76 A.D. 2d 68, 70 (N.Y. App. Div. 1980).

In the present case, accepting the facts as alleged by Plaintiff as true, the breach of the purported license would have occurred in 1994 when Defendants released the album containing

"Machine Gun Funk" and did not pay Plaintiff according to the terms of the purported license, which relates to correspondence in 1994 between Peterer and Johnson (Docket No. 326 at 6). The limitations period did not begin to run in 1995, as asserted by Plaintiff, upon the date Defendants allegedly misrepresented to Arista that "Up For the Down Stroke" was not used in "Machine Gun Funk," as Defendants already would have been in breach of the purported license agreement for non performance. Nor can Plaintiff's claims be saved by allegations of the continuing wrongful acts of Defendants' in misrepresenting the origin of their music each time "Ready to Die" was re-released and each time "Ready to Die" or "Machine Gun Funk" was sold. The facts as alleged by Plaintiff, clearly indicate that the purported license called for full performance upon issuance of the license, i.e. 50% ownership of "Machine Gun Gunk," and not for continuing performance over a period of time (Docket No. 326 at 6). Thus, because this action was filed in May, 2001 and the alleged breach of the purported license occurred sometime in 1994, Plaintiff's claim for breach of contract is barred by the applicable statute of limitations.

Accordingly, Defendants' Motion to Dismiss (Docket No. 330) Count 6 of Plaintiff's Complaint (Docket No. 326) is GRANTED and Plaintiff's claim for breach of contract is dismissed. Furthermore, in light of the foregoing, the Court finds it unnecessary at this time to address Defendants' argument that Plaintiff's claim for breach of contract is preempted by the Copyright Act.

4.      Action for Declaratory Judgment (Count 3).

In Count 3 of the Compliant, Plaintiff seeks a declaration of rights with respect to the ownership of "Machine Gun Funk" as a derivative work of "Up For the Down Stroke." In the alternative, Plaintiff seeks a declaratory judgment as to its percentage ownership of "Machine

12

Gun Funk" and "Ready to Die." Plaintiff further seeks a declaratory judgment that, as a result of its ownership of "Machine Gun Funk," any and all assignments, transfers and licenses of the infringing copyright in "Machine Gun Funk" and "Ready to Die" are null and void.

Defendants move for dismissal of Count 3 (Docket No. 330) on the grounds that the Copyright Act does not authorize an award of ownership in the copyright of an allegedly infringing work. Defendants further allege that if such relief were authorized under the Copyright Act, it would be barred by the three year statute of limitations set forth in 17 U.S.C. §507(b), applicable to claims of copyright ownership.

The Copyright Act provides for monetary damages, either in the form of actual damages and/or profits or statutory damages. 17 U.S.C. §504. The Copyright Act also provides for nonmonetary damages such as injunctive relief and impoundment and destruction of the infringing articles. 17 U.S.C. §§ 502 and 503. In addition, attorney's fees and costs may be awarded pursuant to the Copyright Act. 17 U.S.C. §505. Furthermore, the Copyright Act provides for a limitations period of three years from the date a cause of action accrued. 17 U.S.C. §507(b).

The Court finds that the Copyright Act does not authorize an award of ownership of the copyright in an allegedly infringing work based upon a theory that the infringing work is a derivative work. See, 17 U.S.C. §§502-505. Thus, the Court finds that Plaintiff is not entitled to a declaration of ownership of "Machine Gun Funk" as a derivative work of "Up For the Down Stroke." If, however, Defendants are able to prove their claim of license, Plaintiff may be entitled to a percentage ownership of "Machine Gun Funk" by virtue of the license, separate and apart from any remedy provided under the Copyright Act and/or injunctive relief. More

13

specifically, as alleged by Plaintiff, the consideration for the purported license is a "50% ownership of Machine Gun Funk." (Docket No. 326 at 6). If such allegation is proven true, then Plaintiff may be entitled to a declaration that it is the co-owner of "Machine Gun Funk." Such claim of ownership, by its very nature, would not be barred by the three year limitations period set forth in 17 U.S.C. §507(b) in that Plaintiff's ownership interest, if so proven, would have been established upon issuance of the license.

Accordingly, Defendants' Motion to Dismiss (Docket No. 330) Count 3 of Plaintiff's Complaint (Docket No. 326) is GRANTED in part and DENIED in part. To the extent Plaintiff asserts a claim for declaratory judgment of its ownership of "Machine Gun Funk" and "Ready to Die" on the basis that such works are derivative, Defendants' Motion (Docket No. 330) is GRANTED. To the extent Plaintiff seeks a declaration of ownership based upon the existence of the purported license, Defendants' Motion (Docket No. 330) is DENIED.

5. <u>Punitive Damages</u>.

In its Complaint (Docket No. 326 at 20), Plaintiff requests punitive damages for Defendants' tortious interference with business advantage, and alternatively for Defendants' breach of contract. In its Complaint (Docket No. 326 at 18), Plaintiff also requests an award of punitive damages under the Copyright Act.

Defendants move for dismissal (Docket No. 330) of Plaintiff's claim for punitive damages on the grounds that Plaintiff cannot recover punitive damages for breach of contract under New York common law, and that punitive damages are not available under the Copyright Act. In response to Defendants' assertions, Plaintiff concedes that punitive damages are not available under the Copyright Act, but asserts that it has properly pled its claim for punitive

14

damages for breach of contract.

The Court finds that as a general rule and based upon the agreement of the parties, punitive damages are not available under the Copyright Act.  See, On Davis v. The Gap, Inc., 246 F. 3d 152. 172 (2d Cir. 2001).  The Court further finds that based upon the Court's earlier rulings that Plaintiff's claim for tortious breach of contract and tortious interference with prospective business advantage are barred by the applicable statute of limitations, Plaintiff's claim for punitive damages are not available under New York common law.

Accordingly, Defendant's Motion to Strike (Docket No. 330) Plaintiff's plea for punitive damages is GRANTED and Plaintiff's plea for punitive damages (Docket No. 326) is stricken.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE